Barna v. United States Barna v. United States It is a decision on appeal from the Court of Federal Claims. Mr. Montalvo, you want five minutes for rebuttal? Yes, ma'am. Okay. One second, please. Ready? Okay, you may begin. May it please the Court. Good morning. There are two issues here. One, the pretrial agreement. The second one, the promotion. The promotion issue is a clear-cut legal entitlement. The PTA, there was a breach. If we look at Article V, Section 1F, it says accordingly Can you tell me where that is in the record? In the record, Your Honor, we cited it at 032 in the brief. I'm sorry. I should know this, but I just wanted to follow along with the agreement and I don't have it at hand. Are you talking about the pretrial agreement, Your Honor? Yes. It's at 254. Okay. Thank you. I thought you were talking about the MCM. So that's the pretrial agreement. I was referring to the Marine Corps Manual, Subsection 5, or Chapter 5, Subparagraph 1F5, where it indicates that nonjudicial punishment may not be imposed for an offense tried by a state or foreign court unless authorized by regulations of the Secretary of Concern. And so if we look at the date of the pretrial agreement, Your Honor, Colonel Smith entered into that pretrial agreement on the 29th of September. And so if we look at the conviction for the dry reckless that Staff Sergeant Barna sustained, that was on 21 September. So at the time that the colonel entered into this pretrial agreement, she was aware of the conviction in state court and she did not seek any secretarial authority to further pursue. So you're saying that it's not really a breach question. On that point, you're arguing that the agreement was void ab initio because it wasn't authorized by law. That's correct. As it relates to that, there are a number of different issues, Your Honor, but as to that issue, yes. On 21 September, her bundle sort of property rights analogy, you know, her bundle of rights, her bundle of authority changed because she has the sole authority to enter into this agreement or not. Where is that argument in your blue brief? I'm sorry, Your Honor? Where is that argument in your blue brief? I'm sorry, this argument sounds very new to me. I thought you were arguing that the breach is after the PTA agreement was entered into and referred to nonjudicial punishment that she added additional charges, not that the agreement was void ab initio as a whole. That's in addition. We've argued that the ultimate issue in the alternative, right? In the alternative, yes. One, she had no authority to enter into the agreement even if he mistakenly thought she did. That's correct. And the other is that she breached the agreement by adding the new charges. That's correct. Yes, Your Honor. And so the additional charges, the 86 and the 92, if we look at that, the alleged misconduct occurs during August of 2010. So the timeframe we're talking about is she enters into this agreement on 29 September 2010. The alleged misconduct that she adds in this NJP is in August of 2010. So putting aside the question of whether there was any legal authority to enter into this agreement in the first place, focusing just on the breach question. Yes, Your Honor. Assuming that we agreed with you that it was a breach to incorporate prior existing conduct into the discharge, wouldn't that only get him a specific performance remedy and therefore he's still discharged based on what was in the agreement? No, Your Honor. So in the agreement under subparagraph 10, it says, I agree to waive administrative discharge board based on any act or omission reflected in the charges and specifications that are subject of this agreement. So what you see is a sequence of events for a dry record. Right, right. So if he's entitled to that, if that's the agreement that he entered into and that she should have stuck to, then specific performance of that agreement is that he, and you can see that her purpose of the agreement was getting him to be discharged. So specific performance of that agreement is to narrow the basis for the discharge, but he's still discharged, right? No, Your Honor. So she makes a recommendation. So there's a process after, which happens in later October, a few days later after the nonjudicial punishment. So she makes a recommendation. So if the counsel at the time, and I have not spoken to counsel, but if I were representing the person and said, listen, you don't need to go to an administrative separation board, you don't need to hire another counsel to deal with a dry reckless, you're a three-combat Marine tour, this is not something that would normally get you discharged. So that is something that you can plead on the papers to the convening authority and say, hey, General, I'm a good guy. I was almost becoming an officer. I have all of this stuff. I made a mistake, and I should be retained. That's a different case. That's not the case that went up to the General.  No, he's not, Your Honor. He's agreeing to waive an administrative separation board to contest the facts under it to make his pitch in front of a panel, which then only makes a recommendation to the General. So there are two ways to do it, basically plead on the paper or go in front of a panel and make the argument, and then they make a recommendation based on those arguments. So with the additional charges, it changed the entire dynamic of what went up to the commanding general and what they relied upon in making the discharge determination. His conduct with an Article 92 and an 86, which is disobeyance of a lawful order and an unauthorized absence, is much more egregious conduct in the sphere of things than a dry, reckless driving over a lane. I'm sorry, Your Honor. I mean, the government argues that, in fact, you never preserved the 92 piece of it, that you only objected to the 86. Yes, Your Honor. That was a Scribner's error. It was inartful pleading. But it was obvious that there was additional the issue was there was additional misconduct that was alleged in this NJP that he was not put on prior notice of. There are no additional facts or circumstances in the record reflecting the basis of those charges. The he was not given any additional rights in terms of, you know, presenting, you know, contesting that. He did not go back to his counsel. Right. So your point is a breach is a breach, whether it's one or two or three additional charges. If it's additional charges, it's a breach. That's right, Your Honor. So again, let's go back to the remedy. So the remedy would be what? He gets specific performance as to the agreement, which then would allow him to go before this panel? That's correct. Yes, Your Honor. With a different set of facts. No. I mean, he would contest whatever the separation board. I'm sorry, Your Honor. I mean, you have this argument that you're entitled to a separation board, but you waive the separation board. As it relates to this particular charge. Right. Because if you get specific performance, you will have waived. But it didn't waive my right to contest the discharge. The board is a procedure to determine. It's a firing board. So you go in front of the firing board. You can either make an argument in front of people, or you can do it on the papers.  It's the same, Your Honor. The panel, the board, it's called the administrative separation board. It's a three-person panel, they call it. Okay. And so it's three persons that sit usually as an officer, two officer and enlisted. Okay. And so they would sit there, and he would walk in with his counsel and basically lay out why he should not be discharged, and they make a couple of different determinations. And so what hearing did you waive in the agreement? That particular hearing, so not to be in front of a panel to be heard, but he didn't waive his right to rebut or contest the basis of the discharge recommendation. In what format, then, would he rebut or contest it if he doesn't get a hearing? In his writing. He would do so in writing. Okay, so what you would say a specific performance would mean, you'd start over, the panel or board would look at it again, and he doesn't get a hearing, but he gets to submit written materials. If you set the PTA aside, he's back ab initio to where he was before this plan. There are two different questions. Setting it aside because there was no legal authority for it in the first instance is one question. Yes, Your Honor. But assuming you don't set it aside, but you find a breach, then you have to figure out a remedy. And under contract law, the first thing you look at, and under the board authority, the first thing you look at is specific performance. Yes, Your Honor. And so assuming he gets specific performance, then he's waived the hearing, right? He gets those other charges off, but he's waived the hearing. Yes, Your Honor. I understand your question. So what the court is saying is basically if the 86 and the 92 are removed from the context, that he would then have to reappeal his charge as it relates to this specific charge, the dry reckless. But when you say a dry reckless, in the agreement he agreed to a reference to alcohol involvement, right? That's correct. Yes, Your Honor. Okay, so why is that a dry reckless? I'm just curious as to how the military views these things. So Colonel Smith was a judge advocate as well as a commander, and so she was very astute. And so what she was putting in here was aggravating language so that she could make a better argument when she went up to the general. Yeah, but he agreed to that aggravating. No, I understand that. Yes, Your Honor. But the charge itself, if you read the specification, it's basically driving around and being stupid. There's no question he made a mistake. Can I ask you, but you're running out of your time. Yes, Your Honor. I know we've got your rebuttal, but I want to know about these other two charges. I mean, even if we agree with you that they shouldn't have been referred with this NJP, although I don't see any specific language in the agreement that says that, can't they just bring those charges again too? So there are two things, Your Honor. First of all, there are no sub rosa agreements. So she knew about the charges when she entered into this particular agreement. Can you point to me to any explicit language in this agreement that says the only basis for the NJP based upon prior conduct will be this one charge? Well, if you go to RCM 705, Your Honor, which governs the pretrial agreements section, which is this is where the authority for this falls under, it says that all of the agreements need to be in writing. So she could have brought him to. You're not answering my question. The agreement says what it says. It certainly says that for the charges that were brought to the court martial board, only one of the however many could be brought to NJP. But where does it say any other outstanding charges were excluded? So he was referred to a court martial. So the court had jurisdiction over the charges. So this was a pretrial agreement to resolve all of the pending matters. And in paragraph 12, it states there are no other agreements, oral or written, expressed or implied between myself, the community authority, or any other representative of the government. That was on 29 September. And on 1 October is when the NJP was conducted. So two days later. Almost within a day. So at the time that she executed this document, she said that there were no understandings or agreements pending. And we all know that if someone's – Regarding the plea and sentence limitations in this case, I don't see where – and maybe this is bad drafting. Maybe this is what was intended, or maybe it was intentionally not there. But it doesn't say anything about any other uncharged instances of misconduct. The nonjudicial punishment can be conducted on additional charges. But at the time when she entered into this agreement, she knew of these additional charges. She ambushed him. When he walked in there, the individual understood that he was to accept the NJP. Otherwise, he would be in breach of the contract. Let me ask you this. Yes, Your Honor. If she brought the NJP pursuant to this agreement on just the one charge and then brought a separate NJP on these two other charges, would she have been able to do that? With proper notice, yes, Your Honor. So she can still bring them now? Yes, Your Honor. But why wasn't the notice of nonjudicial proceedings he was given and that he signed that included these two charges specifically give him notice? It did not, Your Honor. He signed that document on the day of the nonjudicial punishment. It's 1 October. So she conducted the nonjudicial punishment. He executed that document on the same. And he was using this document to say that he had to accept the NJP. But the NJP specifically referenced these other two charges. After the NJP was conducted, yes, Your Honor. The procedure is he goes in to report. He negotiates this with his counsel. His counsel says, go forth, do great things. Here's your PTA. Make sure you do good. He goes in there. He reports. Sixth and center. They have the conversation. She says, you're also accused of 86 and 92. He's like, wait a minute. You know, this is not, you know, good to go, whatever. She's like, well, I find you guilty anyway. Here, sign the documents and get out of here. But why did he sign them? Because he thought, based on the PTA, that he had to accept it. Not to the other two, though. This is the problem when you don't have representation of counsel, Your Honor. There was a whole ---- You said a minute ago that he checked with counsel. I'm confused because I thought the briefs were quite clear that he just said he checked with counsel when, in fact, he did not. Prior to, as it related to this charge, not after the proceedings. He understood from the proceedings. So there was a negotiation between the government and defense counsel that formed the basis of this agreement. They then submitted it. The convening authority then waited until 29 September after the conviction out in town. Then he goes and reports in and executes the NJP like he was told to do. And then the next thing was he was separated because his understanding was there wasn't any issue because he had to accept it. But it doesn't say very clearly, and it is in our full, I fail to accept nonjudicial punishment. It doesn't say if there are extra charges there or not. He didn't understand the legal difference. If an attorney had been standing there, they would have ---- if I was standing there, I would have said, you know, ma'am, this wasn't the deal. We didn't ---- you knew about these 86 and 92, if it was even valid, right? You know, we could contest these charges, okay, because he had permission from the SACO. So they weren't ---- they didn't get added to the court martial, which was pending. So there were no additional charges that she could have levied if they were valid charges. And that was two months when she knew of the charge, and while the court was pending, he was arraigned before the judge. There are no additional charges sitting there. So she's well aware of all of this, and she negotiated the terms of that and could have easily included and said, hey, I'm not going to accept this plea unless you also agree to this 86 and 92. Okay, I think you're way past your time. We'll give you three minutes. Can I ask one quick question? Yes, Your Honor. I don't see where you've got the authority argument in your blue brief. But if you could just tell me when we get back up where it is, I might be missing it. I just want to know where it is. Which particular authority? The authority argument, whether she had the authority. Oh, yes, Your Honor. Understood. Thank you, Your Honor. Thank you. Good morning, Minneapolis Court. Your Honor, I think I'll start with the point that you just asked. And this argument, as it relates to the timing of the military's actions and the timing of a criminal proceeding in California, it is not in any of the briefs. This was an argument that was brought up in the trial court. The trial court dismissed this argument because the facts, as Mr. Barnett's counsel has laid out, are not only demonstrably false, as shown by the record, they're actually demonstrably false as written in the complaint. What about a broader authority argument? Was that raised below or raised here on appeal? I'm not sure what you mean by broader authority. Well, just that she lacked the authority for other reasons. Perhaps this is a new reason, but is there something more? Well, no. I mean, this woman is what's called the convening authority. She was an 06 corps in the Marine Corps. And the role of the convening authority is to recommend what's called separation authority, which in this case was a two-star general. But what about when you had the civil proceeding already concluded and it was decided? Yes, Your Honor. As a threshold matter, that argument is not before this Court. Just assuming that it is, because it was clearly fleshed out in the reply brief. The problem with that argument is that the dates don't match up with what Mr. Barnett has represented. The military actually began its disciplinary process first, and then as that process was going, Mr. Barnett entered into a plea deal in California. Well, but the process wasn't concluded. I mean, there was no punishment imposed. So you're saying that the rule only relates to at what point you begin the process and not? That's exactly right, Your Honor. And the record is clear that the military disciplinary process began first. And then as that process was ongoing, the California court resolved in whatever manner it was going to resolve its issue. And the BC&R actually did consider that issue and found that Mr. Barnett's arguments had no merit. Those issues were brought up in the trial court, and they were dismissed, and they have not been appealed here. The first time that came up was last night at 530, when Mr. Barnett filed something that he styled as a notice of supplemental authority. Well, no, it's all over the reply brief, because there is a lot of it in the reply brief. But, Your Honor, not with respect to how this California issue plays out with the timing of the nonjudicial punishment. Well, that surprised me, because I wasn't with you last night, and I certainly heard it. Okay. Well, in any event, as the trial court ruled, the nonjudicial punishment began well in advance of any resolution of the California case. And if Mr. Barnett has raised this argument in his reply brief or in the supplemental authority, at that point in time, it would be an improper time to raise an argument. Okay. So, assuming that the rule works as you say, that it just turns on when the disciplinary process begins and not when it ultimately is resolved or the discipline is imposed, then we turn to the breach question. I mean, this seems to me like the ultimate sandbag. You negotiate with someone to the point where he knows he could be facing a discharge, he agrees to plead, and then you say, oops, I forgot to tell you that I knew about two other charges. Well, Your Honor, I understand where you're coming from. There's some facts that need to be cleared up that are evident in the record. The first is, Mr. Barnett signed this agreement on September 2nd, not September 29th. That's when the commander processed it through her office. He signed the agreement on September 2nd. The actual nonjudicial punishment was issued a month later, October 1st. The way to think about this is, this is essentially a plea bargain where Mr. Barnett and the Marine Corps executed an agreement with respect to a very specific charge, the driving under the influence charge. But it's also a settlement agreement, basically. Exactly. She wants to get rid of him, and he wants to narrow the focus of it as much as possible, so they enter into this plea agreement. And these are not activities or charges that occurred after the execution of this agreement, is it? Actually, the Article 86, absent without leave, failure to show for work, occurred after Mr. Barnett signed it. It literally happened the same day. So he signed this agreement and then failed to go to work later that day. That's the equivalent of someone entering a settlement agreement or a plea bargain for a specific crime and then walking out the door committing a brand new crime, throwing up their hands and saying, well, I'm immune. That's precisely what happened here. He was not sandbagged at all, let alone the fact that the pretrial agreement is silent to any other, with regards to the Marine Corps treatment of any other later discovered misconduct. He actually committed a crime immediately after signing this agreement. And what about the other one? Your Honor, that occurred about two weeks prior to, and that's the Article 92 charge that the trial court said was not part of any previous pleadings. That was some false statements that he made about two weeks before he executed the agreement, and those were not known. Those did not come to light until well after this process had moved through. But I think more to the core of what you're asking, and I know Judge Hughes asked a lot of questions about this, whether or not the Marine Corps could have split this up into separate nonjudicial punishments. In fact, they can't. The Marine Corps or the Manual for Court Martial says that absent extraordinary circumstances, commanders cannot do that. They cannot stack punishments like this. They are required when a nonjudicial punishment happens to take all known misconduct and add it to one nonjudicial punishment. And the reason they do that is because there's only one punishment that comes out of NJP. So in effect here, Mr. Barna committed three crimes and he was only punished one time. What Mr. Barna's counsel is arguing, actually, is to his client's detriment because to split those up into three separate punishments, he's now tripled the punishment that Mr. Barna faces. That's precisely why. Well, there's not any more punishment you can give someone once you discharge them, right? No, Your Honor. If you look at what actually came out of the nonjudicial punishment, there was a fine, there was confinement, there was reduction in rank. All of that happened prior to the discharge. And so what Mr. Barna's counsel is suggesting is that he would have been better off by tripling all of that. And that's precisely what would happen. And that's exactly what the Manual for Court Martial does not allow. You're saying all of those would have been tripled for each one of those things? He would have been subject to three different punishments. I'm not saying that they would have been precisely the same because there's other charges. I mean, certainly not showing up for work after you sign a plea agreement doesn't sound like something that would result in a ton of punishment. Well, and I think to your point, there are different magnitudes of these three crimes, but they are crimes under the Uniform Code of Military Justice. Would the commander have exercised her discretion to come up with similar fines for all three? I think you're right. That's doubtful. But what we can't escape is that there would have been three separate punishments for those crimes. Whatever they would have been at this point is just really speculation. But I think as we're talking about this breach argument, we need to look at the actual terms of the pretrial agreement and what the United States Marine Corps agreed to do. What they agreed to do was not court-martial Mr. Barna for his driving under the influence misconduct. That's undisputed. That's precisely what he got out of this agreement is that he was not court-martialed and did not face the much more significant penalties that he would have faced from a court-martial. Now, the real crux of Mr. Barna's argument is that somehow this pretrial agreement, it granted him some sort of broad immunity for all other misconduct. Let me ask you. Well, I don't understand that he was arguing that it should be for all post-activity, but certainly the pre-agreement activity. In other words, he was saying he understood he was putting his prior behavior behind him. Right. And as we've delineated now, that fact sort of becomes irrelevant to our case because we know that the only other misconduct the trial court looked at happened after he signed the agreement, and the false official statement happened two weeks before. So regardless of where Mr. Barna draws that distinction, it's really largely irrelevant. I'm sorry. No, that's okay. Can I ask you that the one thing that does concern me a little bit is his and sign it even though the two new charges were added. I mean, you agree that with the addition of the two new charges, he could have requested a board on that, right? Well, not a court-martial is the proper way to say it, but yes, he certainly could have declined nonjudicial punishment and demanded a court-martial. That's exactly what he did for the two. No, but he would have had to go through the court-martial. In other words, you're saying he would have had to breach the pretrial agreement, get court-martialed in order to get a hearing on the other two points. No, not at all. When the nonjudicial punishment was put in front of him, he had the option to decline that punishment for, in fact, not only the two new ones, but also the pretrial agreement. Right, but then that would have been a breach of the pretrial agreement, and he would have been facing a court-martial. Could he have accepted the NJP according to the agreement and not breached that, but elected a court-martial in the other two charges? Certainly, and none of that would have – there's nothing in the pretrial agreement that prohibited him from refusing nonjudicial punishment. In fact, it's the exact opposite. It empowered him to do that with respect to a charge that was already done. But it was all one nonjudicial punishment. Right, but it's – He couldn't break it out. Oh, he certainly – She didn't give him the option to break it out. Your Honor, there's nothing in the record that says that she forced him to sign all three of these at one time. There are three distinct charges. He has the opportunity to essentially plead guilty. So you've got a JAG officer, or someone who was a JAG officer, a judge, and a soldier who doesn't have counsel, and you're saying he had to understand that he was allowed to separate out this when she presented it to him as a fait accompli? This is exactly how the nonjudicial punishment works in the military. But to your point of he wasn't represented by counsel, that's disturbing for a number of reasons because I think part of the problem that this case has had as we've seen evolving arguments over time is that Mr. Barnett has been represented by counsel, often different counsel, but he's been represented at counsel literally at every single stage of this case. Now for him to come back – But not at the time he was dealing with this issue. He signed an agreement saying that he had consulted with an attorney, and for him to come back, and in fact in the trial court – He consulted with an attorney before the plea agreement, but at that point, no one had told him about these other charges. When he signed that, he indicated that he had discussed this matter with his attorney. Every step of the way, he made that representation. And then in the trial court, he submitted an affidavit that the trial court didn't accept, saying that, well, even though I represented that, I've been speaking with counsel all this time, I actually wasn't. But regardless of that, the document itself, if you clearly read the document, it gives him these rights. So whether or not he was telling the truth in the first instance that he had consulted an attorney, or he was telling the truth in the second instance that he didn't consult an attorney, regardless, that document lays out all of his rights. He read all of that, and he agreed to that nonjudicial punishment. There is a second aspect of Mr. Varna's claim, which is the fact that he believes that he was wrongfully denied a retroactive promotion. The Marine Corps regulations set out three separate reasons why Mr. Varna was actually not eligible for promotion when he submitted an application to the Remedial Selection Board. One is his guilty plea in the California court, the nonjudicial punishment that we've been speaking of, and the fact that that punishment was suspended, and then the ultimate discharge recommendation. All four of those issues rendered him ineligible for promotion. And Mr. Varna submitted his application to this Remedial Selection Board after all of those events had happened. So Mr. Varna knew that his discharge was pending and still submitted an application to this Remedial Selection Board. Amongst the many problems with the argument, the first is that it asked the court to substitute its judgment for the military commanders to essentially order Mr. Varna's promotion. It's important to remember that this Remedial Selection Board just produces a recommendation that then goes to the commanders to act upon. And what Mr. Varna is actually asking is that the court substitute its judgment for the military commanders. The second fault we... Did the military commander have any option with respect to... We get sort of theoretical at this point because by the time that recommendation was made, Mr. Varna was no longer in the Marine Corps, and so the recommendation had nowhere to go because Mr. Varna wasn't a Marine at the time. The Board of Correction for Naval Records looked at this and also found that even if there was somewhere for that recommendation to go, all of these different reasons rendered him legally ineligible for promotion anyway so that the commander couldn't have... Hypothetically, if Mr. Varna were in the Marines at the time, the commander couldn't act on that promotion anyway. The second problem with this argument is the factual basis for it is incorrect. If you look at Appendix 159, that's literally the recommendation document that Mr. Varna relies on to say that he's entitled to the promotion. That document itself requires commanders to comply with the regulations that I've been speaking of. So as a factual matter, the recommendation itself incorporates these regulatory prohibitions. The second... or the next problem certainly is it defies the law. The only court that's ever looked at this issue is the Western District of Pennsylvania in 2012 in the Fraser case. They looked at precisely this issue. Is a Marine Corps remedial promotion selection board able to promote someone who is facing any of these number of regulatory prohibitions? In that case, the individual was incarcerated for attempted murder. The court found that not only is the recommendation null and void, the application is null and void, any actions that involve that remedial selection board are, in its words, null and void. And sort of the last problem with this argument is that it frankly defies common sense because what the ultimate outcome of this would be is that the military would be powerless to stop the retroactive promotion of a convicted criminal. And I would submit to you that that simply cannot be the case, that a convicted criminal can... the military cannot stop the retroactive promotion of a convicted criminal. And I think my last point is that the basis for, I think, is the date of the promotion decision, which would be the date that that commander receives that recommendation, which in this case would have been in the 2012 area, versus the date of rank that's assigned to that individual for pay purposes and the like. And in that case, it would have been 2008. Because the date of the promotion decision occurs within the timeline of these events, Mr. Barnum is ineligible for promotion. Unless there's any further questions, I thank you for your time. All right, thank you. Now you need to catch your breath. You talk fast. Okay, my time is short, I understand. So first is the promotion issue. The discretionary part of this is whether or not he was going to be selected to the promotion. And if we look at Mark Horsetman, it talks about that there are certain instructions in the regular schedule, selected boards are instructed to follow the ESB in their deliberations. So the selection process, and it also goes on to talk in depth about the case-by-case basis and the nature of that. The CMC will make the final determination as to which cases are referred and also the selection process. It will not be announced. The proceedings and recommendations of the ESRB will not be disclosed or released until they are approved by the Commandant of the Marine Corps or its designated representative. And that is exactly what 158 and 159 are. So the Marine Corps, well aware of everything that was going on with Mr. Barna, Staff Sergeant Barna at the time, accepted this, went back to 2008 because of the prohibition that says that you cannot, is prohibited from considering material, adverse material regarding events occurring after the regularly convened scheduled board for the remedial promotion. So they're going back in time and they're determining in 2008 whether he was eligible under the rules and regulations and everything that applied at that point. They went through that process, they selected him, and then announced it in accordance with the regulations. So he has a clear-cut legal entitlement. This is not about whether they selected him or discretion or anything. The Commandant of the Marine Corps issued this and said that he was entitled to obtain the rank of Staff Sergeant. As it relates to the NJP, the Article 5 argument, we don't have that clearly enunciated in our brief, but that was more expanded upon in the district court level in terms of the JAGMAN issue and then her authority. What's your response to the timing point? The way you described the timing was not really accurate. The process started long before. And I will address that exactly, Your Honor. So if you go to the Manual for Courts, Marshal, the decision whether to accept or reject an offer is within the sole discretion of the convening authority. Whether or not the individual signs off on that pretrial agreement is completely irrelevant. It is up to the convening authority. That is when that agreement becomes authorized. So there are two parties here, and the party that is meaningful, according to the Manual for Courts, Marshal, is the convening authority. And she signed that with her knowledge and awareness of everything prior to September the 29th. So whatever he submitted, because she had the opportunity to say, I'm not taking this deal. You go to court, Marshal, and get another conviction, or do this, or I'm going to charge you with additional charges, or I'm going to withdraw it and send it to a general court, Marshal. She could have done anything that she wanted to do on September the 29th and was well informed on how to do all of that, and she chose to sign that document. So that date is exactly correct. That is the date that's most important, because that's the date that she made that decision. And when she made that decision, she did it in full view of everything that counsel was referring to. There are no mysteries here. Colonel Smith was not bamboozled. The person that was ambushed was Staff Sergeant Barnum when he walked in there because the document says you will accept nonjudicial punishment. There wasn't a parsing through that. He's a simplistic layperson that doesn't understand the nuances. He was expecting to hear about the 111 that was a nonissue. That's not what happened. And when you see the subsequent discharge documents, they rely heavily upon the 86 and the 92 to make a further determination as to his discharge, and that's where the prejudice and the breach has caused an injury. All right, thank you. Thank you, Your Honor. All rise. The Honorable Court will adjourn until tomorrow morning. It's 10 o'clock a.m.